## Commonwealth Title Insurance & Trust Company, Appellant, *v.* Coleman.

*Attorneys at law—Fees—Payment—Receipt.*

An attorney at law was employed to conduct a very important and extensive litigation involving nearly $2,000,000. At the time of his employment he stated to a representative of his client that the cost of the litigation might be as much as $50,000. During the progress of the litigation he was paid certain fees. Before the end of the litigation the client who lived in France sent to the attorney the sum of $20,000. A formal receipt was given for the money which simply stated that the attorney had received the amount of the order. Shortly afterwards

the attorney wrote to his client a letter in French, in which he used the following language: " Je vous dois mille remerciements pour la facon genereuse dont vous avez daigne regler mes honoraires." The letter as sent had been corrected by the attorney's French teacher. The sentence as originally written by the attorney was follows: " Je vous dois mille remerciements poir votre genereux paiement." The evidence as to the meaning of the word " regler " was not uniform. Some of the witnesses testified that it meant " pay " and others that it meant " settle." The trial judge construed the word to mean " pay " and refused to permit the French teacher, who had corrected the letter, to testify that it meant " payment on account." The court charged that the payment of $20,000 was a payment in full to the date of the payment, and that nothing could be recovered, except for services rendered after that date. The testimony of a number of leading members of the bar was that the services rendered during the whole litigation were worth $100,000. The jury returned a verdict for an amount which showed that it covered merely services rendered after the payment of the $20,000, and judgment was entered on the verdict. On appeal the six judges of the Supreme Court who heard the argument were equally divided in opinion whether or not the testimony should have been received and the case left to the jury, and the judgment was affirmed.

Argued Jan. 23, 1903. Appeal, No. 236, Jan. T., 1902, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1900, No. 18, on verdict for plaintiff in case of Commonwealth Title Insurance & Trust Company, Executor of F. Carroll Brewster, Deceased, v. Rosalie Parant Coleman. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed by divided court.

Assumpsit to recover professional fees.

At the trial it appeared that in 1893, F. Carroll Brewster, Esq., was retained by Rosalie Parant Coleman to represent her in a very important and extensive litigation in the estates of her husband and son. The principal involved was about $1,750,000. A number of leading members of the bar testified that a fee of $100,000 for all the services rendered was reasonable. During the progress of the litigation and until April 26, 1898, Mr. Brewster received about $9,000 in fees. On May 16, 1898, he received from his client, who lived in France, an order for $20,000. For this he sent a formal receipt, simply stating that he had received the amount of the order. On May 20, 1898, he sent to his client the following letter:

No. 214 West Washington Square, Phila.

May 20, 1898.

MA CHÈRE MADAME:

Je vous dois mille remerciements pour la façon généreuse dont vous avez daigné regler mes honoraires.

J'ai l'honneur de vous announcer que vous avez gagné une grande victoire (non seulement contre M. Bertram, en Avril mais aussi) contre Madame Ybanez samedi dernier.

Je compte fermement sur une autre victoire en Juin et la définitive en Fevrier 1899.

Je vous félicite de tout mon cœur. Jamais il n'y eut dame plus persecutée que vous, mais en revanche jamais triumphe plus éclatant.

Veuillez Madame agréer l'assurance de mon respectueux dévouement.

F. CARROLL BREWSTER.

This letter was copied from a letter originally written by Mr. Brewster but corrected by his French teacher, Prof. Lorenz. The corrected draft was as follows:

PHIL: May 19, 1898.

MA CHÈRE MADAME:

*le façon généreuse*

Je vous dois mille remerciements pour ~~votre genereux~~ *dont vous daigné regler mes honoraires.* ~~paiement.~~

J'ai l'honneur de vous announcer que vous avez gagné une grande victoire non seulement contre M. Bertram ~~le pr~~ en Avril mais aussi contre Madame Ybanez ~~le~~ samedi dernier.

*Je compte fermement sur une autre*     *définitive* ~~J'attends une seconde~~ victoire en Juin et la ~~derniere~~ en Fevrier 1899.     Λ

*il n'y eut*

Je vous félicite de tout mon cœur. Jamais ~~une~~ dame

*mais en revanche jamais* plus persecutée que vous ~~et jamais un resultat plus~~ *triomphe plus éclatant,* ~~triomphant.~~

*Veuillez Madame agreer l'assurance de mon respectueux* ~~Agrez mes salutations les plus sincères, et empres~~ *devouement.* ~~sées.~~

[The parts in Roman were the letter as originally written. The words in Italics were the changes made at the dictation of Prof. Lorenz.

[Endorsed by F. Carroll Brewster]
Coleman.

My letter of thanks announcing victory of Sat. May 14/98.
May 20/98.

The following question was asked of Theodore C. G. Lorenz:

" Q. I notice the rough draft that you hold in your hand has a number of changes, words being stricken out and other words interlined in place thereof. Will you tell us, please, when those changes were made ? "

Objected to as being ungermane to this case.

Mr. Simpson: I propose to show that the letter as subsequently changed—

Mr. Duane requests that the offer be made at the side bar.

Mr. Simpson: I have no objection to doing that. I don't propose to state anything in the paper.

Counsel now come to the side bar and Mr. Simpson states that he proposes to follow the question asked the witness by proof by the witness upon the stand that when the letter was originally written it contained the expression " votre genereuse paiement; " that Judge Brewster submitted it to the professor who was his French teacher, and asked him whether that was a proper expression to use; that he was told that the words quoted were not elegant French; that the words interlined constituted elegant French, and denoted a payment on account and not a payment in full, and the change was thereupon made, being written by Judge Brewster under the dictation of the witness upon the stand, and the letter was sent with that change appearing in it.

Objected to.

The court sustains the defendant's objection to the offer because it is an offer to show when the witness has translated the letter " you have deigned to pay my fees," and now attempts to show by the same witness that he should have translated the letter, " you have deigned to pay my fees in part or on account."

Exception to plaintiff. [1]

J. Coleman Drayton was asked this question as to a conver-

sation he had with Mr. Brewster at the beginning of the litigation:

" Q. Will you give the conversation ? "

Objected to as not evidence for any purpose. Objection overruled. Exception noted for plaintiff. [5]

" A. The conversation was begun by myself. I said to Judge Brewster: ' This is going to be an expensive litigation, and I should like to have some idea—not a definite idea, still an idea as near as you could possibly give me—as to what the cost of this litigation to Mrs. Coleman would be, taking into consideration your services and the services of Messrs. Coudert Brothers.' He said, ' How much would you think ? ' I said, ' Well, 1 suppose it will be some twenty-five or thirty thousand dollars,' and he said it would be more than that. I said : ' How much do you put it at—how much do you think it would cost ? ' ' Well,' he said, ' it might be as much as fifty thousand dollars.' "

The court charged as follows :

Under the law, the trial of a common-law issue such as this is, in a court, involves the discharge of certain duties on the part of the judge and certain other and distinct duties on the part of the jury. To the judge is committed the duty of ruling upon questions of law arising during the progress of the case ; to the jury is given exclusively the duty of deciding upon questions of fact. I have ruled upon numerous questions of law during the presentation of the evidence ; and since the evidence was all in I have ruled upon a question of law, which largely diminishes the duties cast upon you as triers of fact. [I have ruled, as a matter of law, that the receipt or acknowledgment sent by Judge Brewster to his client in May of 1898, was in point of fact a receipt or acknowledgment of the payment of a sum of money satisfactory to him, for his services rendered for his client, up to April 11, 1898, and that his executor has therefore no right to recover from Mrs. Coleman anything for his services rendered back of that date. This leaves then, for you, the simple question—I won't say the " simple question " in the sense of its being trivial, but it leaves for you the sole question—What is the just and reasonable compensation to be awarded to Judge Brewster's

estate, for his services from that time down to the time of his death.] [2]

I have no desire whatever to even hint to you what my views with regard to Judge Brewster's compensation are ; it is for you to settle that question. You have, to guide you, the testimony, which has been most carefully taken throughout this case ; and you have the arguments of counsel that have been made in presenting the views of either side, as to what should be your verdict in this case. I feel convinced that if I attempted to go over in detail the basis of the compensation to be made by the jury, I would rather retard or hinder you than I would aid you. I shall therefore leave the question to you, saying to you that, under my ruling on the law, you are limited to awarding compensation to the executor of Judge Brewster's estate for his legal services on behalf of Mrs. Coleman, from April 11, 1898, down to the time of his death. Whatever sum you find to be just and reasonable compensation for those services you will award to the executor, in this suit the plaintiff, with interest from the time of suit brought, July 12, 1900.

The plaintiff has asked me to charge you, gentlemen, as matters of law, that :

1. The verdict of the jury should be in favor of the plaintiffs for the value of the services rendered by Judge Brewster during the entire litigation, less the payments made on account of such services and with legal interest on the balance. *Answer :* I decline that point, that is to say, I say to you that that is not, in my view of the case, the law on the subject. [3]

2. Even if the jury believe that at some time in the summer of 1894, 1895 or 1896, Judge Brewster said to J. Coleman Drayton that the fees and costs of the litigation " might be as much as $50,000," such statement will not deprive his estate of the right to recover for the actual value of the services rendered by him to the defendant, less the payments made on account of such services, and with legal interest on the balance. *Answer :* I have already said to you, gentlemen, that his estate has not the right to recover for the actual value of the services rendered by him to the defendant (less the payment made on account of the actual value of the services rendered by him) after April 11, 1898, he having been settled with, by his client, upon a basis satisfactory to him for services up to the end of

the will case.   I think it just, however, to say (though the point does not require me to say it to you) that you are not compelled to be guided by the statement of Mr. Drayton as to what Judge Brewster told him, in 1894, 1895 or 1896, might be the expenses of the litigation.   It did not rise to the dignity of a bargain; it was the expression of an opinion, and it may have been some guide to the client, but if the client desired to pin her lawyer down to a fixed and definite sum she should have contracted it.   She not having done so, it becomes pertinent evidence simply as aiding you in determining what should be the quantum of the fee for Judge Brewster's services.  [6]

3. The letter of May 20, 1898, will not operate to deprive plaintiffs of the right to recover the actual value of the services rendered by Judge Brewster to the defendant, less the payments made on account of such services, and with legal interest on the balance.   *Answer*: That, of course, raises the point, in this case, upon which I have ruled against the plaintiff.   I therefore decline that point. [4]

Verdict and judgment for plaintiff for $12,164.17.   Plaintiff appealed.

*Errors assigned* were (1, 5) rulings on evidence, quoting the bill of exceptions; (2, 3, 4, 6) above, instructions, quoting them.

*Alex. Simpson, Jr.*, with him *Francis E. Brewster*, for appellant.—The letter of May 20, 1898, did not operate as a receipt in full for services to date.

Assuming that there was no dispute as to the meaning of the letter and that it operated as a receipt, the court below erred: Girard Fire, etc., Ins. Co. v. Canan, 195 Pa. 589; Walker v. Tupper, 152 Pa. 1; Shepherd v. Busch, 154 Pa. 149; Smith v. Wilson, 3 B. & Ad., 728; Guillou v. Earnshaw, 169 Pa. 463; Postlethwaite's App., 68 Pa. 477; Follweiler's App., 102 Pa. 581; MacConnell v. Wright, 150 Pa. 275.

To constitute a payment, money or some other valuable thing must be delivered by the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose: Kingston Bank v. Gay, 19 Barb. (N. Y.) 459; Cushing v. Wyman, 44 Maine, 121; Selser's Est., 141 Pa. 530.

It is clear that if we assume that this letter operated as a receipt, it only operated as a receipt for all the five prior payments, not even for this particular sum, and not as a payment in full at all. If it had said, "Received $20,000 for professional services," it would have been for the jury, if for any one, certainly not for the court, to say whether the surrounding circumstances determined it to be a payment in full: Shepherd v. Busch, 154 Pa. 149.

Assuming that there was no dispute as to the meaning of the letter, still it would not operate as a receipt: Girard Fire, etc., Ins. Co. v. Canan, 195 Pa. 589.

It is submitted that the burden of proving that a payment is in full is upon him who avers it, that defendant did not produce sufficient evidence to carry that burden, and hence that the trial judge was not only in error in his ruling, but that he should not have submitted the question to a jury at all: Curtis v. Moore, 20 Md. 93; Wallace v. Keyser, 51 Pa. 493; Robbins v. Spencer, 140 Ind. 483 (38 W. E. Repr. 522); Lovett's Executors v. Mathews, 24 Pa. 330; Messmore v. Morrison, 172 Pa. 300; Gorman v. Bigler, 8 Pa. Superior Ct. 440; Fisher v. Ruch, 12 Pa. Superior Ct. 240.

*Francis Rawle*, with him *Russell Duane*, for appellee.—There is a quasi-estoppel, under the facts, to set up a further claim for fees in the will case: Strosser v. Ft. Wayne, 100 Ind. 443; Daniels v. Tearney, 102 U. S. 415; Wilkinson v. Crookston, 75 Minn. 184 (77 N. W. Repr. 797); Oliver v. Vernon, 4 Mason (U. S. C. C.), 275; Hinkle v. Ry. Co., 31 Minn. 434 (18 N. W. Repr. 275); Harlow v. Wilkinsburg Boro., 189 Pa. 443; Crawford v. Forest Oil Co., 189 Pa. 415; Chapman v. R. R. Co., 7 Phila. 204.

The correctness of the translation was for the court: Armstrong v. Burrows, 6 Watts, 266; Di Sora v. Phillipps, 10 H. L. C. 624.

PER CURIAM, May 4, 1903:

The six judges who heard this case being equally divided in opinion, the judgment must be affirmed.